[Doc. No. 95]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| VICTOR OPPERMAN, et al.,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>ALLSTATE NEW JERSEY INSURANCE COMPANY, et al.,<br><br>　　　Defendants. | Civil No. 07-1887 (RMB) |

**OPINION AND ORDER**

The issue this Opinion and Order will address is whether defendant, Allstate New Jersey Insurance Company ("Allstate"), must produce in an accessible form proprietary software owned by a third-party that Allstate licenses for its use. In connection with this issue the Court has received plaintiffs' "Motion for Production of the Integriclaim Software System" [Doc. No. 95], Allstate's opposition [Doc. No. 99], and the opposition of Marshall & Swift/Boeckh, LLC ("MS/B"), the owner and developer of the requested software.[1]  The Court has also conducted extensive oral

---

1. Although MS/B is not a party, the Court has nevertheless considered all of its numerous written submissions opposing plaintiffs' discovery request.  MS/B has also attended and actively participated in several court hearings that addressed the present discovery dispute.  Shortly after the Court received plaintiffs' objection to MS/B's participation in the case without a formal entry of appearance, the Court advised MS/B that it would no longer entertain its submissions unless it formally entered its appearance. [Doc. No. 110].  The Court advised MS/B that if it filed a motion to intervene for the limited purpose of protecting its confidential information, the motion would be promptly addressed.  To date MS/B has chosen not to intervene.  Nevertheless, MS/B has already had a full, fair and complete opportunity to air its objections to plaintiffs' discovery

argument on the issue.  For the reasons to be discussed plaintiffs' motion is GRANTED.

Background

Plaintiffs' class action complaint was removed to this court on April 19, 2007. [Doc. No. 1].  On June 6, 2004, a fire occurred at plaintiffs' property which was insured by Allstate.  See Complaint at ¶¶7-8.  After the fire plaintiffs and Allstate exchanged their estimates of the value of the property loss. Plaintiffs claim that Allstate's estimates were unreasonably low. In this lawsuit plaintiffs challenge the accuracy and legitimacy of Allstate's property loss estimates.  Plaintiffs claim that although Allstate represented that its estimates were based on Home Depot prices, they were unable to purchase the goods at the listed prices when they visited the store.  Plaintiffs purport to represent a class of "all [New Jersey] persons ...  who had made claims under an Allstate issued policy, and received estimates for their building or dwelling losses containing the representation that the pricing was based upon Home Depot pricing."  Complaint at ¶44.

Plaintiffs' motion focuses on the customized MS/B software Allstate used to adjust its property losses.[2]  Plaintiffs refer to

---

request.  In connection with this Opinion and Order the Court has considered and evaluated all of MS/B's submissions and arguments

2.  Although the parties agree that for discovery purposes the relevant time period is 2000-2004, Allstate did not use MS/B's software during this entire time. See May 22, 2008 Transcript ("Tr.") at 12:17-23, Doc. No. 105.   In 2003, MS/B licensed "Integriclaim Software" that Allstate used.  Prior to 2003, from the time Allstate started to prepare estimates that represented its prices were provided by Home Depot (2000-2003), the pricing databases were prepared by a predecessor to MS/B. Id. Allstate concedes that the requested Home Depot pricing is relevant and does not contest that this information should be produced if it

this as the "Allstate Special Edition Integriclaim Software System, including the Administrator software." See Plaintiffs' Brief ("Pb") at 1, Doc. No. 95-2. (Hereinafter "Integriclaim software" or "software"). Plaintiffs' claim the software "is the computerized partial loss estimating system that is uniformly used by Allstate to adjust and pay its first-party property claims, including the Opperman claim." PB at 11. Plaintiffs request a copy of the software so they "can analyze how the system processes and/or manipulates the original Home Depot pricing data before it is generated onto Adjuster Summary estimates provided to Allstate policyholders, including the Oppermans." Pb at 1. Plaintiffs argue they want this access to "determine how the [MS/B] system processes and/or manipulates the Home Depot pricing material data." Pb at 2. Plaintiffs want to "focus on the database and on how the line item pricing is manipulated, compiled, and otherwise computed." Pb at 2. In simple terms plaintiffs want the requested information "to figure out exactly what happens to ... Home Depot material pricing from the time it's transmitted from Home Depot to MS/B, the journey it takes through the system before it ends up on the estimate." See May 22, 2008 Tr. at 33:18-22, Doc. No. 105. Plaintiffs want to know if the Home Depot prices were "manipulated, altered or changed." Id. at 41:19-22. They also want to "determine the interplay between the material data and the cost data ultimately appearing in the final aggregate line item estimate, as well as what impact the inclusion of Home Depot pricing has on the ultimate aggregate estimate of loss." Pb at 3.

---

is available.

3

Plaintiffs argue that to accurately determine how the Home Depot pricing data is processed and manipulated they need "unfettered" access to MS/B's software and not just the ability to use the software. Pb at 11. For this reason plaintiffs claim they "must evaluate the internal workings of the [MS/B] software system." Id. Plaintiffs argue that unless they do this evaluation they will be unable to identify the internal formulas and/or algorithms used to generate the line items in the adjuster's estimates. Id. at 6, 8. Plaintiffs also argue that unless they obtain the requested software they will not be able "to fully evaluate how the Integriclaim software system processes and manipulates the Home Depot material pricing data, including the tracing [of] the Home Depot prices from the original data as supplied by Home Depot to the final estimate line items produced by Integriclaim." Id. at 12.

Allstate and MS/B oppose plaintiffs' discovery request and argue: (1) they already provided the relevant information plaintiffs need to pursue their claims, (2) plaintiffs do not need "full and unfettered access" to MS/B's software, (3) plaintiffs have not exhausted less intrusive means to obtain the requested information, and (4) plaintiffs' consulting expert on the relevant software issues is mistaken regarding his opinions on this discovery dispute.

This is not the first occasion the Court has had to address a discovery dispute involving MS/B's software. The issue has been addressed during at least five or six telephone and in-person conferences held since February 2008. Earlier this year the Court

4

Ordered Allstate to produce the software to plaintiffs.[3]  In response Allstate produced the software but did not include the applicable passwords.[4]  This evasive and incomplete production was essentially worthless to plaintiffs.  See Fed. R. Civ. P. 37(a)(4)(an evasive or incomplete discovery answer or response must be treated as a failure to answer or respond). During a joint inspection in July, 2008, Allstate and MS/B made the requested software available for observation by plaintiffs' consultant, John T. Zoltai ("Zoltai").  After this occurred plaintiffs filed their current motion supported by Zoltai's affidavit.  See Doc. No. 95-3 at 1-12.

Discussion

Pursuant to Fed. R. Civ. P. 26(b), plaintiffs are entitled to discovery regarding any non-privileged matter relevant to their claims or defenses.  It is well-established that there is no absolute privilege protecting trade secrets and similar confidential information from discovery. Centurian Industries, Inc. v. Warren Steurer & Assoc., 665 F.2d 323, 325 (10th Cir. 1981)(citing Federal Open Market Committee v. Merrill, 443 U.S. 340, 362 (1979)).  Fed. R. Civ. P. 16(c) addresses this issue and provides that for good

---

3. On January 29, 2008, the Court ordered Allstate "to make available a laptop in the office of plaintiffs' attorney that gives the plaintiffs access to the current version of the Integra software, which will enable plaintiffs to gain access to the available Home Depot data." See Tr. at 22:12-21, Doc. No. 52.

4. Allstate claims MS/B refused to give it a registration code so that plaintiffs could use the software. See May 22, 2008 Tr. at 124:15-21, Doc. No. 105.  As discussed infra, the Court rejects the notion that Allstate's contract with MS/B bars it from producing the passwords plaintiffs need to access MS/B's software.

5

cause a court can issue an order "requiring that a trade secret or other confidential research, development, or commercial information ... not be revealed or be revealed ... in a specified way."

A party resisting discovery of trade secrets must demonstrate that the disclosure of the information will be harmful. If this is demonstrated the burden shifts to the party seeking disclosure to establish that the requested information is relevant and necessary to the action. The district court must then balance the need for the trade secret information against the claim of injury that could result from the disclosure. Centurion Industries, 665 F.2d at 325-26. See also Pansy v. Borough of Stroudsberg, 23 F.3d 772, 787 (3d Cir. 1994). "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure." Centurion Industries, 665 F.2d at 326. If the balance falls in favor of production, the court should still endeavor to assure that any potential damage that could result from disclosure is minimized. The Pansy decision summarized this analysis as follows:

> [T]he court ... must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.

> Once the court determines that discovery policies require that the materials be disclosed, the issue becomes whether they should be 'disclosed only in a designated way' as authorized by the last clause of Rule 26(c)(7) .... Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

23 F.3d at 787(quoting from Arthur R. Miller, <u>Confidentiality, Protective Orders, and Public Access to the Courts</u>, 105 Har. L. Rev. 427, 433-35 (1991)).

After considering all relevant evidence it is clear to this Court that the requested software is relevant to plaintiffs' claims. Plaintiffs argue that Allstate supplied them and the class with inaccurate and misleading repair cost estimates that were allegedly based on Home Depot pricing. Based on this claim, therefore, it is essential for plaintiffs to learn precisely how Allstate prepared its estimates. Since the requested software is an integral step in Allstate's calculations, plaintiffs must know how Allstate's software computes the final numbers used in Allstate's summaries, such as the documents prepared for plaintiffs' estimates. If an Allstate adjuster simply visited a single local Home Depot store and only used those prices for its estimates it would be simple to determine how Allstate calculated its estimates. However, that is not what happened. Allstate used MS/B's pricing data and software to prepare its estimates. Accordingly, the requested MS/B software is central to the issues in the case and should be produced.

The fact that the production of the requested software is essential to plaintiffs' analysis is supported by plaintiffs'

7

consultant.  Plaintiffs want to determine (1) whether unmodified Home Depot pricing data is present in the database tables used by Integriclaim, (2) whether it is possible to use different software programs to independently create and distribute a pricing database that purports to contain Home Depot data, and (3) how other factors ultimately impact Allstate's final line item estimate.  Pb at 2.  Despite inspecting and actually using the requested software, Zoltai avers, "it was not possible to determine how the system processes the original Home Depot material pricing data."  See Affidavit at ¶17, Doc. No. 95-3.  Zoltai is convinced he has "exhausted all least-intrusive means to assess the Integriclaim software system." Id. at ¶21.  Zoltai also avers he needs "[f]ull access to the software and all end user, requirements, design, test, and implementation documentation is necessary ... [to] ... determine whether or not exact Home Depot data exists in the distributed Allstate pricing data."  Id. at ¶20.  In addition, Zoltai claims that "full and unfettered access to the system set up and provided by MS/B at the July 23 inspection is necessary."  Id. at ¶21.

Plaintiffs do not dispute they are seeking access to MS/B's trade secrets, but they argue Allstate and MS/B will not be harmed by the disclosure.[5]  Plaintiffs also argue the steps they have already agreed to take will prevent any harm from the disclosure. Plaintiffs further argue that the relevance and importance of the requested information outweighs any potential harm from its disclosure.  The Court agrees with plaintiffs.

---

5.  Plaintiffs stipulate that MS/B's software is a trade secret. See March 19, 2008 Tr. at 32:9-21, Doc. No. 71.

8

There is no legitimate dispute that granting unlimited and unchecked access to MS/B's proprietary software could potentially damage MS/B. MS/B has a right to protect its trade secrets. However, substantial precautions will be put in place to prevent harm to MS/B. Most importantly, Allstate's production will be subject to the Discovery Confidentiality Order ("Order") [Doc. Nos. 37, 106] entered in the case. The Order specifically limits the use of designated confidential information for use solely for purposes of this case and "not for any business or other purposes whatsoever." Doc. No. 37 at ¶8.a. The Order also limits to whom confidential information may be disclosed and requires persons to whom disclosure is made to sign a "Non-Disclosure Agreement." To specifically address the concerns of Allstate and MS/B, the Court amended the Order to assure that they have a reasonable opportunity pursuant to L. Civ. R. 5.3 to move to seal confidential information before it is filed with the court. Doc. No. 106. The amendment also makes it unmistakenly clear that any production by a non-party shall be subject to and governed by the terms of the Order. In Sedona Corporation v. Open Solutions, Inc., 249 F.R.D. 19, 24-25 (D. Conn 2008), the court ordered the plaintiff to produce confidential business information of a third-party who was in direct business competition with the defendant. The Court reasoned that the parties' protective order, which was akin to the Order in this case, sufficiently addressed the plaintiff's concerns. Similarly, the Court finds that the parties' Discovery Confidentiality Order sufficiently protects the interests of Allstate and MS/B such that the potential for harm resulting from the disclosure of MS/B's

9

software is either non-existent or negligible. The Court notes that in a further attempt to protect MS/B's interests the Order was entered without prejudice to MS/B's right to move to intervene pursuant to Fed. R. Civ. P. 24 so it could act to limit the production of its confidential documents and information. As noted, MS/B has elected not to move to intervene.

Not only are MS/B's interests protected by the Order but its interests are also protected by the fact that: (1) Zoltai will be the only consultant who may use and study the software; (2) plaintiffs will not be given access to Allstate's live database or network: (3) Zoltai will not obtain the source code for MS/B's software and he agreed not to decompile the software to obtain the code, and; (4) plaintiffs will access and work with the requested software in a stand-alone environment. The Court also notes that Zoltai is not MS/B's business competitor and he has no motivation to use MS/B's trade secrets for anti-competitive business purposes.

The Court rejects Allstate's argument that plaintiffs have "not come forward with any legitimate reasons as to why they need to go 'behind the curtain' to probe the inner-workings of the Integriclaim software." See Allstate's Brief at 2. To the contrary, plaintiffs' moving papers, including Zoltai's affidavit, make a compelling case why they need access to MS/B's software. Zoltai claims that although he inspected and used the software, he has not been able to study it in the manner in which he must do to address the key issues in the case. As Zoltai explained, he wants to study the software in detail to determine how Allstate's estimates are calculated; Zoltai does not simply want to use the software as

10

though he were taking a tutorial.

The Court recognizes that Allstate and MS/B believe that less intrusive means are available rather than the production of MS/B's software, and that plaintiffs do not need MS/B's software to obtain the information they need. For the reasons already discussed, the Court rejects Allstate's arguments. The Court also recognizes that Allstate and MS/B claim Zoltai is badly mistaken. However, for discovery purposes the Court is not required to conduct a trial to determine whether Zoltai or MS/B is ultimately correct on all issues. The Court's Order is appropriate and timely in view of the fact that plaintiffs have made a credible good faith demonstration that they genuinely need the requested information for legitimate purposes. After reviewing Zoltai's resume [Doc. No. 95-3 at 7-12], the Court is satisfied that he is qualified to address the relevant discovery issue before it.[6]

The Court rejects MS/B's argument that because it is a third-party to this lawsuit and has no personal stake in the litigation, it should not have to produce its trade secrets. Numerous cases have ordered third-parties to produce trade secret information in lawsuits in which they were not directly involved. See Centurion Industries, supra (ordering Cybernetic to produce the technical operating details of its teaching devices, including software); Mycogen Plant Science, Inc. v. Monsanto Co., 164 F.R.D. 623 (E.D.Pa. 1996)(ordering Ecogen to produce information regarding B+ toxin genes or B+ toxins to its competitor, Monsanto); In re Letters

---

6. Zoltai has a M.S. in Computer Information Sciences. He also has over 25 years of experience in the information technology field.

Rogatory...., 144 F.R.D. 272 (E.D. Pa. 1992)(ordering Aydin to produce trade secret information in connection with a proceeding pending in Argentina). See also Sedona Corporation v. Open Solutions, Inc., 249 F.R.D. 19, 24-25 (D. Conn. 2008)(ordering plaintiff to produce the confidential information of third parties in direct competition with defendant). Further, it is not unusual for a court to order the production of a party's software if it is relevant to the issues in the case. See, e.g., Centurion Industries, supra; Dynamic Microprocessor Assoc. v. EKD Computer Sales, 919 F.Supp. 101 (E.D.N.Y. 1996); Metavante Corporation v. Emigrant Savings Bank, No. 05-CV-1221, 2008 WL 1969596 (E.D. Wis. May 5, 2008).

The court also rejects Allstate's argument that its licensing agreement with MS/B bars it from producing the requested software with all necessary passwords, activation codes, etc., so that plaintiffs can have full and "unfettered" access to the software. Allstate and MS/B have not cited any legal authority for the proposition that parties to a licensing agreement can immunize relevant information from discovery that a court orders produced. See In re Letters Rogatory, 144 F.R.D. 272 (E.D.Pa. 1992)(Aydin, a non-party to the underlying litigation, was ordered to produce documents in response to a subpoena even though Aydin argued that compliance would force it to breach its contract with the Argentine Air Force and the production was a threat to Argentina's national security). Moreover, Fed. R. Civ. P. 34(a)(1)(A) requires a party to produce responsive items and designated electronically stored information within its possession, custody or control. There is no

12

dispute that Allstate has possession, custody and control of the necessary passwords to meaningfully use the requested software.

In principal, the Court agrees with Allstate and MS/B that the parties should exhaust reasonable alternatives before the Court orders Allstate to produce MS/B's software. The Court rejects the argument, however, that these efforts have not already been exhausted. Various discovery disputes concerning MS/B's software have been addressed at numerous conferences and have been the subject of several motions. Plaintiffs have inspected and used the subject software, plaintiffs have reviewed the background documents plaintiffs produced regarding the software, plaintiffs have accessed the Home Depot pricing databases, the parties' consultants and employees have exchanged numerous written submissions, and in general the interested parties have exhaustively attempted to work out a resolution of the present discovery dispute. The Court is satisfied, and so finds, that plaintiffs have satisfactorily exhausted reasonable efforts to obtain the information they need short of "unfettered" direct access to MS/B's software.

Conclusion

Accordingly, for all the foregoing reasons, and for good cause shown,

IT IS HEREBY ORDERED this 24th day of November, 2008, that plaintiff's Motion for Production of the Integriclaim Software System is GRANTED; and

IT IS FURTHER ORDERED that to the extent not already done Allstate shall produce to plaintiffs the data, pricing and software Allstate used between 2000-2004 to adjust property losses in New

Jersey; and

IT IS FURTHER ORDERED that if earlier versions of the software are not available Allstate shall produce to plaintiffs the latest version of the software that is useable with the relevant Home Depot pricing data; and

IT IS FURTHER ORDERED that Allstate shall produce the software in a form and manner to assure that it is accessible and useable for the purposes described in plaintiffs' moving papers. Allstate shall produce with the software all passwords, keys, activation codes, etc., that plaintiffs need to access the software and data referenced in this Order so that plaintiffs can use the software in the same manner in which it was used by Allstate, except that the software will be used in a stand-alone environment. Allstate and MS/B shall have no right to be present during plaintiffs' use and inspection of the software; and

IT IS FURTHER ORDERED that Allstate's production shall be completed by December 15, 2008; and

IT IS FURTHER ORDERED that all information produced by Allstate pursuant to this Order shall be deemed Confidential pursuant to the applicable Discovery Confidentiality Order [Doc. Nos. 37, 106], and shall be subject to all provisions in the Order; and

IT IS FURTHER ORDERED that the only consultant who shall be permitted to access MS/B's software is John Zoltai. Zoltai may only use the information in accordance with this Opinion and Order; and

IT IS FURTHER ORDERED that Zoltai may only use the information derived from MS/B's software for the purpose of prosecuting the claims in this lawsuit. Further, he shall not decompile the

software to identify the source code of the actual application; and

    IT IS FURTHER ORDERED that within ten (10) days of the final resolution of this litigation plaintiffs and Zoltai shall return to Allstate the software and data referenced herein, and all notes or other writings related thereto, together with an affidavit attesting that this was done.

                                              s/ Joel Schneider
                                              JOEL SCHNEIDER
                                              United States Magistrate Judge